UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| JOSIE RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>UNITED COLLECTION BUREAU, INC.,<br><br>    Defendant. | Case No.: 19-cv-18<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Josie Rodriguez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant United Collection Bureau, Inc. ("UCB") is a foreign business corporation with its principal place of business located at 5620 Southwyck Blvd, Toledo, Ohio 43614.

7. UCB does substantial business in Wisconsin and maintains a registered agent for the purposes of service of process at Corporation Service Company, 8040 Excelsior Drive Suite 400, Madison, Wisconsin 53717.

8. UCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. UCB is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

10. UCB is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. It is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

**FACTS**

11. On or about March 11, 2018, Citibank N.A. ("Citibank") mailed Plaintiff a credit card account statement regarding an alleged debt owed to Citibank associated with a "Sears" store-brand credit card account ending in 1452. A copy of this account statement is attached to this Complaint as Exhibit A.

2

12. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred by use of a credit card, used only for personal, family, and household purposes, including the purchase of goods at Sears stores.

13. <u>Exhibit A</u> contains the following:

| Payment Information | |
|---|---:|
| New Balance | $4,975.18 |
| Minimum Payment Due | $605.85 |
| Payment Due Date | April 8, 2018 |

14. The payment remittance slip in <u>Exhibit A</u> also contains the following:

| | |
|---|---:|
| Payment Due Date | April 8, 2018 |
| New Balance | $4,975.18 |
| Past Due Amount† | $499.85 |
| Minimum Payment Due | $605.85 |
| Amount Enclosed: $ | |

15. <u>Exhibit A</u> states that, as of March 11, 2018, the alleged Sears store-branded credit card account had a "New Balance" of $4,975.18, with a "Past Due Amount" of $499.85, a "Minimum Payment Due" of $605.85," and a "Payment Due Date" of April 8, 2018.

16. <u>Exhibit A</u> further states:

| TRANSACTIONS | | | |
|---|---|---|---:|
| Trans Date | Description | | Amount |
| **FEES** | | | |
| 03/08 | LATE FEE | | $ 37.00 |
| | TOTAL FEES FOR THIS PERIOD | | $ 37.00 |
| **INTEREST CHARGED** | | | |
| 03/12 | INTEREST CHARGE ON PURCHASES | | $ 18.77 |
| | TOTAL INTEREST FOR THIS PERIOD | | $ 18.77 |

17. <u>Exhibit A</u> states that Plaintiff incurred a late fee in the amount of $37.00 on March 8, 2018 and an interest charge in the amount of $18.77 on March 12, 2018.

3

18. On or about March 14, 2018, UCB mailed Plaintiff a debt collection letter regarding the same alleged owed to Citibank associated with a "Sears" store-brand credit card account ending in 1452. A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

19. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

20. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter, used by UCB to attempt to collect alleged debts.

21. Upon information and belief, <u>Exhibit B</u> was the first letter UCB sent to Plaintiff regarding this alleged debt.

22. <u>Exhibit B</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

23. <u>Exhibit B</u> also contains the following:

| | |
|---|---|
| Creditor: | CITIBANK, N.A. |
| Regarding: | SEARS GOLD MASTERCARD |
| Last Four Digits of Creditor Account Number: | XXXXXXXXXXXX1452 |
| United Collection Bureau, Inc. Reference Number: | ▮0518 |
| New Balance: | $4956.41 |
| Minimum Payment Due: | $499.85 |

24. <u>Exhibit B</u> states that, as of March 14, 2018, the alleged debt had a "New Balance" of $4,975.18 and a "Minimum Payment" of $499.85.

25. <u>Exhibit B</u> is false, deceptive, misleading, and confusing to the unsophisticated consumer.

4

Case 2:19-cv-00018-JPS   Filed 01/03/19   Page 4 of 14   Document 1

26. The information UCB provided in Exhibit B contradicts and conflicts with the information that the creditor, Citibank, provided in Exhibit A.

27. Exhibit B states that the "Minimum Payment" is $499.85, whereas Exhibit A states that the "Minimum Payment Due" is $605.85 at the same time.

28. Plaintiff did not make a payment between the time Exhibit A was mailed and the time Exhibit B was mailed; the "New Balance" stated in Exhibit B is equal to the "New Balance" stated in Exhibit A, plus the $37.00 late fee that was added on March 8, 2018.

29. Plaintiff's account would have remained in default even if she tendered the "minimum payment due" stated in Exhibit B.

30. While it is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance, *see, e.g., Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) (holding that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."), the "Minimum Payment" stated in Exhibit B also does not correspond with the "Past Due Amount" stated in Exhibit A.

31. A debt collector materially misleads debtors when it represents that it is collecting a "minimum payment," if the amount stated in the letter is, in fact, a past due amount that is less than the minimum payment due on the date the debt collection letter is mailed. *E.g., Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

32. Plaintiff was confused by Exhibit B.

33. The unsophisticated consumer would be confused by Exhibit B.

5

34. Plaintiff had to spend time and money investigating Exhibit B, and the consequences of any potential responses to Exhibit B.

35. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit B.

### ***The FDCPA***

36. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016

U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

37. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

7

action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

38. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

39. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

40. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

41. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

43. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

44. The debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Ozier v. Rev-1 Sols.*, No. 17-cv-118-JPS, 2017 U.S. Dist. LEXIS 126017, at

*6 (E.D. Wis. Aug. 9, 2017) ("The FDCPA requires a debt collector to accurately, and without deceptive language, state the amount of the debt owed.") (citing 15 U.S.C. § 1692e).

45. The Seventh Circuit held in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

46. The failure to make the disclosures required by 15 U.S.C. § 1692g(a) in a non-confusing manner *per se* violates the FDCPA and there is no materiality inquiry necessary. *Janetos*, 825 F.3d at 324; *see also, Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) (the amount of the debt must be "accurately disclosed").

### *The WCA*

47. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

48. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

49. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

50. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

51. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

52. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

53. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

54. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

10

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

55. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

56. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

57. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

58. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

59. The failure to state the correct amount of debt and effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. Defendant misrepresented the amount of the debt. *Compare* Exhibit A *with* Exhibit B.

62. Exhibit A, mailed on or about March 12, 2018 states that the "New Balance" for Plaintiff's account is $4,975.18 but Exhibit B states that the "New Balance" is 4,956.41.

63. Exhibit A also states that the "Minimum Payment Due" for Plaintiff's account is $605.85, and that the "Payment Due Date" was April 8, 2018.

64. Exhibit B, mailed on March 14, 2018, during the billing cycle covered by Exhibit A, states that the "Minimum Payment" was $499.85.

65. The unsophisticated consumer would be misled as to the total account balance and the minimum payment due. As of the date of Exhibit B, a payment of $499.85 would not have returned Plaintiff's account to a current status, nor would it have allowed her to avoid the account charging off.

66. Exhibit B does not accurately state the amount of the debt on the date it was mailed.

67. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. Defendant misrepresented the amount of the debt.

70. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

71. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a credit card account debt owed to Citibank, (d) which debt was incurred for personal, family or household purposes, (e) where the letter was mailed between January 3, 2018 and January 3, 2019, inclusive, (f) and was not returned by the postal service.

72. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

73. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

74. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

75. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

76. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

77. Plaintiff hereby demands a trial by jury.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 3, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com